


**IN THE UNITED STATES DISTRICT COURT**
**OF THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

FILED
2019 OCT -3 P 2: 16
N.D. OF ALABAMA

DEIJAH ATKINS,

Plaintiff,

vs. ) CASE NO.:

**1:19-cv-01624-ACA**

JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES,

Defendants.

---

**COMPLAINT FOR DAMAGES**

---

COMES NOW, DEIJAH ATKINS (referred to herein as "Plaintiff") and complains of the JACKSONVILLE STATE UNIVERSITY (hereinafter referred to as "JSU) for causes of action showing:

## I. NATURE OF THE ACTION

1. This is an action brought by Plaintiff, Deijah Atkins, against the Defendant, Jacksonville State University, for its collective and individual efforts or failures to act that resulted in the assault and battery of Plaintiff.

## II. PARTIES

2. Plaintiff, Deijah Atkins, is a citizen of the United States and a resident of Lithonia, Georgia for longer than six months.

3. Defendant, Jacksonville State University, is an educational institution located in Jacksonville, Alabama.

4. The Jacksonville State Board of Trustees governs and operates the Jacksonville

State University.

5. The Defendants, Jacksonville State Board of Trustees and Jacksonville State University, were directly involved in the incident alleged in this complaint, acting in a supervisory capacity and as the organizer of the "Fast Start Academy" for the incoming students for the 2017 Fall Semester.

6. At all material times, Coach Ray Harper ("Coach Harper"), was an agent and/or employee of Defendants JSU and Jacksonville State Board of Trustees, acting or failing to act within the scope, course, and authority of his employment and his employer.

7. At all material times, Courtney Peppers, was an agent and/or employee of Defendants JSU and Jacksonville State Board of Trustees, acting or failing to act within the scope, course, and authority of her employment and her employer.

8. At all material times, the Title IX Coordinator, Jai Ingraham, was an agent and/or employee of Defendants JSU and Jacksonville State Board of Trustees, acting or failing to act within the scope, course, and authority of his employment and his employer.

## III. JURISDICTION & VENUE

9. Plaintiff brings this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX"), to recover damages for Plaintiff's injuries and sexual assault, needlessly caused by Defendants' deliberate indifference to the sexual violence Plaintiff experienced at Jacksonville State University. Plaintiffs' action is also being brought pursuant to Alabama common law to recover for Defendants' negligence.

10. Defendant Jacksonville State University is an educational institution and public college in Alabama, with its principal place of business in Jacksonville, Alabama.

11. Defendant Board of Trustees of the Jacksonville State University is a public entity and instrumentality of the State of Alabama charged by law with governing Jacksonville State

Board of Trustees.

12. Defendants receive federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and are subject to Title IX.

13. This court has original jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, as the action is one for damages arising under the United States Constitution and other federal laws providing remedies for deprivations of the rights and privileges of citizens of the United States.

14. The Defendants have consented to this Court's jurisdiction over Plaintiffs' state law claims.

15. Venue is proper because the causes of action occurred within the Northern District of Alabama, Eastern Divison. This Court has venue in this action pursuant to 28 U.S.C. § 1391.

## IV. FACTS COMMON TO ALL COUNTS

16. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

17. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) provides: . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

18. On or about March 17, 2016, three college students and members of the varsity men's basketball team at Western Kentucky University (WKU) were suspended from the basketball team. The suspensions were, according to the WKU guidelines for student discipline,

for offenses which are of such severity or nature that expulsion or suspension of the guilty student is in the best interest of the University.

19. WKU's Office of Judicial Affairs hears matters including those involving sexual misconduct and physical assaults.

20. WKU's Disciplinary Committee conducts hearings including those involving "serious incidents" off campus and on campus incidents qualifying as "egregious violations of the Student Code of Conduct".

21. WKU's Disciplinary Committee can move to suspend or expel students "for severe violations" of the code of conduct or "a gross disregard for the rights of others in the campus community."

22. The WKU Student Code of Conduct specifically defines Sexual Misconduct, and Sexual Assault to include actual or attempted sexual contact with another without that person's consent.

23. WKU publishes a report every year – the Annual Campus Safety and Security Report- indicating how many instances of sex offenses, both forcible and non-forcible, were reported in a given year which is available to the public.

24. The three students identified as being suspended were, Fredrick Edmond, Chris McNeal and Marlon Hunter.

25. Also, on or about March 17, 2016, Head Men's Basketball Coach, Ray Harper, resigned in apparent connection to the suspensions of the three basketball players.

26. Marlon Hunter was expelled stemming out of an incident involving sexual misconduct.

27. Ray Harper was then hired by Defendant Jacksonville State University (JSU) to be its head Men's Basketball Coach on or about April 6, 2016. Coach Harper facilitated the

transfer or enrollment of Marlon Hunter to join him at JSU and become a member of the JSU men's basketball team.

28. JSU and the Jacksonville State Board of Trustees knew or should have known the reasons and circumstances for the suspension of Marlon Hunter and the resignation of Coach Harper.

29. JSU failed to do a proper investigation into the circumstances of the suspensions and resignation. In the alternative, JSU disregarded, ignored or violated its own protocols and standards to allow a star basketball player to enroll as a student.

30. JSU, rather than taking steps to investigate the prior misconduct of Marlon Hunter, prevent and stop such misconduct from continuing or occurring at JSU, as required by Title IX of the Education Amendments of 1972 and JSU's own policies and procedures, JSU disregarded the suspension, took no steps to investigate, took steps that put Plaintiff at a greater risk for abuse, and failed to take meaningful action to protect Plaintiff.

31. JSU's Student Handbook contained the following policies at all times relevant:

a. That sexual harassment is a form of personal abuse and a violation of JSU policy;

b. That students shall not sexually oriented touches, advancements, or physical contact without the full consent of the other party on university property or in university owned or operated buildings;

c. That it is the established policy of JSU to provide an environment free from all forms of sexual harassment, intimidation, and exploitation.

d. That students may bring a complaints alleging sexual harassment to the University and will be provided assistance in resolving the complaint according to policies and procedures governing JSU faculty and staff.

e. That no investigations will take place against the accused person unless the person bringing the complaint consents to be identified, even to the individual accused in the investigation.

32. JSU has the following Title IX Policies in place at all times relevant:

a. That JSU will not discriminate against any person on the basis of gender in violation of any applicable law, including Title IX;

b. That the prohibition against gender based discrimination extends to all University educational programs and activities;

c. That Sexual harassment will not be tolerated within JSU;

d. That JSU is committed to creating and maintaining a campus environment that is free of harassment, exploitation and/or intimidation;

e. That students who are sexually assaulted will be provided support services, a timely and thorough investigation, respectful treatment, resolution within 60 days, information regarding the process and outcomes; counseling, medical, and mental health services; and changes in academic and living situations;

f. That victims have the right to report a sexual assault to local law enforcement;

g. That the victim has the right to be updated on the investigation and be informed of the outcome of a hearing;

h. That JSU reserves the right to notify parents/guardians of dependent students regarding any health or safety risk, change in student status, or conduct situation, particularly alcohol and other drug violations;

i. That all complaints of alleged sexual misconduct are investigated under the oversight of the University's Title IX Coordinator;

j. That JSU will process all formal complaints of sexual misconduct it receives;

k. That generally Each complaint of sexual misconduct will result in an investigation, including interviews and the review of evidence, such as electronic and written material, if any exists;

l. That if an investigation results in a determination that sexual misconduct has occurred, the University will take remedial action, including, where appropriate, disciplinary action, to eliminate the misconduct and prevent its recurrence; and,

m. That Persons who complain about sexual misconduct, or who cooperate in the University's investigation and handling of sexual misconduct reports or complaints, shall not be subject to retaliation for complaining or cooperating, even if the University finds that no sexual misconduct occurred.

33. Nonetheless, Coach Harper was hired and Marlon Hunter transferred and enrolled at JSU.

34. Coach Harper was aware of and knew the circumstances of his resignation and the suspension of Hunter.

35. In the summer of 2017, Plaintiff had graduated high school and was on track to begin college at JSU. She had already acquired credits towards her college courses and enrolled in the "Fast Start Academy" at JSU.

36. As part of the "Fast Start Academy," she was enrolled in classes and lived in a co-ed on-campus dormitory, Logan Hall.

37. The Fast Start Academy in the summer of 2017 was a six-week program designed to help high school students' transition to college.

38. Also housed in the same dormitory were the men of the varsity basketball team, despite the significant age and development differences from the high school girls in the Fast Start Academy.

39. Resident Assistants or RA's were purportedly hired and engaged to supervise minor students who were housed in the Fast Start dormitories being shared by college athletes.

40. Thus, JSU arranged for high school girls like the Plaintiff, on her first visit to a college campus, to be housed in a co-ed dormitory with male members of the men's varsity basketball team. JSU failed to have proper supervision of the children placed into their care by parents with the reasonable expectation that they will not be placed into situations in which their health and well-being were ignored.

41. During the late night of July 21, 2017, the Plaintiff and several of her female friends were in the dorm at JSU.

42. Despite school regulations and the fact that the Plaintiff and most of the dorm was under the age of 21, several parties were being held within the dorms.

43. Plaintiff and her friends attended a party when the police were called.

44. Plaintiff and her friends, all underage, went to a second party in the dorm.

45. Alcoholic beverages were provided or allowed at these parties despite their location in the dorms.

46. JSU and/or its dormitory personnel were aware, condoned, ignored and allowed the consumption of alcoholic beverages in the dormitory and on campus property.

47. Throughout this evening, despite several parties lasting hours, police being called to break one up and alcoholic beverages being openly consumed by underage children, not one representative of JSU appropriately supervised the children trusted to JSU's care.

48. Plaintiff and her friends eventually ended up in the parking lot outside of the dorms in the early morning of July 22, 2017. At that time, Plaintiff first encountered JSU student-athlete Marlon Hunter.

49. Marlon Hunter approached the Plaintiff, in a state of obvious intoxication and verbally assaulted the Plaintiff, stating "you better stop playing, before you get this dick."

50. Plaintiff and her friends then went back inside the dormitory building. Plaintiff needed to use the restroom and while walking down the hallway toward the restroom, she encountered Marlon Hunter for a second time.

51. Marlon Hunter attempted to kiss Plaintiff on the neck and she pushed him away from her and told him to leave her alone.

52. Hunter asked Plaintiff to go to his room and she declined.

53. At that time, Marlon Hunter, a 6'3" 200 pound basketball player, picked up the Plaintiff, threw her over his shoulder and carried her into his dormitory room without her consent as she protested.

54. Plaintiff made as much noise as she could to wake up other residents and alert them to what was occurring.

55. Once Marlon Hunter brought the protesting Plaintiff to his room, he proceeded to sexually assault her over and despite the protests and refusals of the Plaintiff.

56. Plaintiff clearly and verbally declined to engage in sexual relations with Hunter and tried to push him off.

57. Hunter pulled Plaintiff's shorts off and forced himself inside her.

58. Plaintiff, due to the size of Hunter and in fear that he would hurt her, was unable to fight him off of her.

59. Hunter moved away for a moment just as Plaintiff's friends forced their way into the room to stop the attack.

60. At that time, Plaintiff escaped Marlon Hunter's control and fled the room.

61. JSU was notified about the assault, and in clear violation of her rights, failed to notify Plaintiff's mother about the assault for several weeks, despite that Plaintiff was a minor at the time, living with her Mother.

62. JSU, through the efforts of representatives acting during the course and scope of their employment and with the knowledge and consent of JSU officials then conspired to cover up the investigation of the assault and to cover up the assault itself through a series of communications with JSU police, County, State and other officials.

63. As a result of the assault and ensuing cover-up and denial of her claims, Plaintiff has and will continue to suffer mental anguish and emotional distress.

64. As a result of the assault and the ensuing cover up and denial of her claims, Plaintiff was unable to continue down the path to college. Plaintiff's college education was disrupted, she lost tuition, and was forced to change schools due to what the Defendants caused and allowed to happen at the Fast Start Academy.

65. Plaintiff could not return to JSU and as a result worked odd jobs for a year, until she was able to enroll elsewhere – forcing her to start college a full year behind her peers.

66. As a public institution and State University, JSU owed a duty of care to the Plaintiff to not only prevent foreseeable harm to come to a recent high school graduate who is on a college campus for the first time in her life, but to fully and properly investigate her claims and hold the parties responsible.

67. As a public institution and recipient of federal funding, JSU owed a duty of care to the Plaintiff to follow federal statutes and laws including Title IX.

68. Instead of properly investigating the sexual assault of a minor by a JSU student athlete in an on campus dormitory, JSU through the efforts of officers, JSU's Title IX coordinator Jai Ingraham, and university administrators conspired with others, including but not limited to members of the JSU athletic department and supporters, to thwart the investigation, cause a second grand jury to convene and ultimately reverse the earlier grand jury indictment against basketball star Marlon Hunter.

69. Two JSU Police Department officers complained that university administrators interfered with the investigation of Marlon Hunter and were subsequently placed on administrative leave.

70. The actions of the above named JSU officials, employees and representatives deprived Plaintiff of justice and her rights under the constitution of the United States.

71. The actions of the above named JSU officials, employees and representatives covered up their previous failure to properly vet incoming transfer students who had been suspended by his previous school for severe offenses at the prior school.

72. Plaintiff never received the results of the Title IX investigation, despite Title IX requiring promptly informing survivors of the disciplinary outcomes to sexual misconduct allegations.

## COUNT I

## Violation of Title IX – 20 U.S.C. § 1681(a)

(against Defendants JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES)

73. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 66 above as though fully set forth herein.

74. Defendants JSU and Jacksonville State Board of Trustees, through their employee and agent Coach Hunter, knew and had actual notice that Marlon Hunter had been expelled and/or suspended from WKU for "egregious violations of the Student Code of Conduct" which included sexual assault and/or sexual misconduct.

75. Further, agent for the Defendants', Coach Harper, knew and had knowledge of the reasons and circumstances of the suspension/expulsion of Marlon Hunter from JSU.

76. Defendants JSU and Jacksonville State Board of Trustees took no steps to conduct an investigation regarding the expulsion/suspension of Marlon Hunter, even though the information would be relevant to JSU's Title IX obligations and their duty towards their students and faculty.

77. Further, Defendants JSU and Jacksonville took no steps to conduct an investigation, including but not limited to, requesting information from WKU or questioning Coach Harper or Marlon Hunter, himself.

78. Plaintiff experienced sexual assault and "dating violence" at the hands of Marlon Hunter, while attending the Fast Start Academy and enrolled as a student at JSU.

79. Defendants had an obligation to investigate and address reports that Marlon Hunter had conducted himself in a way that put other students at risk at WKU, including incidents of sexual misconduct.

80. Defendants had an obligation to protect Plaintiff and her fellow students from known harm, including at the hands of Marlon Hunter.

81. Sexual Assault is a form of prohibited sex-based discrimination or harassment under JSU Policy and Title IX.

82. The discrimination, consisting of the sexual assault and rape of Plaintiff on JSU's campus, was so severe, pervasive and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits.

83. At all relevant times, Plaintiff was a JSU student subject to Defendants' control, and the sexual assault of Plaintiff occurred in a dormitory on JSU's campus, in the dorm where both Marlon Hunter and Plaintiff resided.

84. The Defendants created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

a. Plaintiff was a member of a protected class;

b. she was subjected to sexual harassment in the form of a sexual assault by another student;

c. she was subjected to harassment based on her sex; and

d. she was subjected to a hostile educational environment created by the Defendants' lack of policies and procedures and failure to properly investigate and/or address the sexual assault and previous sexual misconduct.

85. Defendants and its agents and employees had actual knowledge of the sexual misconduct of Plaintiff created by its failure to make known and/or investigate Hunter's previous misconduct in a timely manner and consistent with its own policy and federal and state law.

86. Despite their obligations to investigate prior instances of sexual misconduct, supervise their students, protect their students from sexual harm, and obligation to deny known sexual predators access to their vulnerable student populations, Defendants' acted with deliberate indifference to the high likelihood that Plaintiff was sexually assaulted.

87. Defendants' deliberate indifference to the sex-based discrimination suffered by Plaintiff included, without limitation:

a. Defendants' deliberate decisions not to investigate why Marlon Hunter was expelled/suspended from WKU;

b. Defendants' deliberate decision not to deny enrollment to Marlon Hunter, despite knowledge as to his prior sexual misconduct and expulsion;

c. Defendants' deliberate decision not to provide supervision to minor students in the Fast Start Academy;

d. Defendants' deliberate decision to violate Title IX;

e. Defendants' deliberate decision to violate the policies, student handbook and procedure of JSU as to sexual misconduct, harassment, and assault;

f. Defendants' deliberate decision to deny Plaintiff a timely and thorough investigation, respectful treatment, resolution within 60 days, and information regarding the process and outcomes;

g. Defendants' deliberate decision to allow Plaintiff to exercise her right to report a sexual assault to local law enforcement without retaliation;

h. Defendants' deliberate decision to not investigate Plaintiff's claim and not take remedial action against her assailant to prevent future misconduct;

i. Defendants' deliberate decision to cover up the investigation of the assault and to cover up the assault itself through a series of communications with JSU police, County, State and other officials; and

j. Defendants' deliberate decision to retaliate against Plaintiff in violation of federal law by not adequately investigating her claim of sexual assault, not informing her parents, and denying her educational benefits.

88. As a result of Defendants' deliberate indifference Plaintiff was subjected to sexual assault, sexual misconduct, and dating violence on JSU's campus, thereby suffering severe emotional distress and a hostile educational environment.

89. Had Defendants not been deliberately indifferent to the sex-based violence conducted before Marlon Hunter arrived at JSU, and instead complied with their own policies and Title IX by properly investigating his expulsion, appropriately supervising or protecting Plaintiff, and taking appropriate steps to protect Plaintiff's safety. The sexual assault of Plaintiff could have been prevented.

90. Defendants persisted in their actions and inaction even after they had actual knowledge of the harm suffered by Plaintiff.

91. Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

92. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

93. Because of Defendants' deliberate indifference, Plaintiff suffered injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; physical and mental pain and suffering; lost future earnings and earning capacity as a result; educational, hospital, medical and related expenses; and loss of educational benefits.

WHEREFORE, Plaintiff demands judgment, costs, and Attorneys' fees pursuant to 42 U.S.C. § 1988(b), against Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES.

**COUNT II**
**Violation of Title IX (20 U.S.C. § 1681, et seq.) Retaliation by Withholding Protections Otherwise Conferred by Title IX**
(against Defendants JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES)

94. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 66 above as though fully set forth herein.

95. Immediately after Plaintiff advised Defendants of the sexual violent attack, she was discouraged from referring the matter to law enforcement for criminal investigation.

96. Defendants and their agents had previously reassured Plaintiff that her assault would be investigated regardless of whether the matter was referred to law enforcement.

97. Once Plaintiff began working with the criminal investigation, however, Defendants and their agents retaliated against Plaintiff by declining to investigate the matter or to otherwise comply with their responsibilities as mandated by Title IX.

98. Because of Defendants' deliberate indifference, Plaintiff suffered injuries, damages and losses, including, but not limited to: emotional distress, anxiety; lost future earnings and earning capacity as a result; educational, hospital, medical and related expenses; and loss of educational benefits.

WHEREFORE, Plaintiff demands judgment, costs, and Attorneys' fees pursuant to 42 U.S.C. § 1988(b), against Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES.

## COUNT III

## NEGLIGENT FAILURE TO SUPERVISE

(against Defendants JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES)

99. Plaintiff re-alleges the allegations contained in paragraphs 1 through 66 above as if fully set out herein.

100. Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES, have a duty to supervise teachers, teachers' aides room assistants, dorm assistants and other employees' employed at the university.

101. Defendant, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES, breached that duty when they failed to properly supervise the room assistants and dorm assistants employed at the university who allowed prospective students attending the Fast Start Academy to engage in under age alcohol consumption and recreational drug use on its campus. Defendants, JACKSONVILLE STATE UNIVERSITY and STATE

JACKSONVILLE BOARD OF TRUSTEES, further breached its duty by allowing male and female students to reside in the same dorm building without proper supervision.

102. As a direct and proximate result of Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE BOARD OF TRUSTEES, failure to supervise its dorm assistants and room assistants ATKINS was sexually assaulted by Marlon Hunter. Plaintiff's injuries include, but are not limited to, physical injuries and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES, for the negligent supervision of their employees.

**COUNT IV**
**NEGLIGENT FAILURE TO TRAIN**
(against Defendants, JACKSONVILLE STATE UNIVERSITY AND JACKSONVILLE STATE BOARD OF TRUSTEES)

103. Plaintiffs re-allege the allegations contained in Paragraphs 1 through 66 as if fully set out herein.

104. Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES, had a duty to prospective students attending the Fast Start Program to properly train room assistants, dorm assistants and other school employees regarding supervising prospective students attending the Fast Start Program and the policy of not allowing underage drinking on the campus including its dorms.

105. Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES, breached that duty failing to properly train its dorm assistants and room assistants and other employees regarding supervising prospective students attending the Fast Start Program and the policy of not allowing underage drinking on the campus including its dorms.

106. As a direct result of Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE BOARD OF TRUSTEES, negligent failure to train its room assistants, dorm assistants and other university employees, Plaintiff was sexually assaulted and battered while attending the Fast Start Program. Plaintiff's injuries include, but are not limited to, physical injuries and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendants, JACKSONVILLE STATE UNIVERSITY and JACKSONVILLE STATE BOARD OF TRUSTEES, for their negligent failure to train its room assistants, dorm assistants and other employees thereby resulting in the injuries to Atkins and for any and all other relief as is just under the premises.

**COUNT V**
**NEGLIGENT HIRING**
(against Defendant JACKSONVILLE STATE UNIVERSITY)

107. Plaintiffs re-allege the allegations contained in paragraphs 1 through 66 as if fully set out herein.

108. The Defendant, JACKSONVILLE STATE UNIVERSITY, assigned faculty member Courtney Peppers to the position of managing the Fast Start Program, including the resident advisors supervising housing where Deijah Atkins was living and assaulted, and assigned Courtney Peppers to supervise the in-coming college students in the Fast Start Academy, including Deijah Atkins.

109. Defendant, JACKSONVILLE STATE UNIVERSITY, had a duty to ensure that anyone hired by this Defendant that would, as part of their job duties and responsibilities, supervise the in-coming college students in the Fast Start Academy.

110. Defendant JACKSONVILLE STATE UNIVERSITY, was negligent when they assigned Courtney Peppers for the position of resident assistant because Courtney Peppers was

negligent and deliberately indifferent to the fact that students were illegally consuming alcohol on campus and in dorms and not being protected.

111. As a result of the negligent hiring by Defendant, JACKSONVILLE STATE UNIVERSITY, Deijah Atkins was assaulted and violently battered while attending the Fast Start Academy under the control and supervision of employees hired by JACKSONVILLE STATE UNIVERSITY. Her injuries and emotional distress as a result of the attack.

WHEREFORE, Plaintiff demands judgment against Defendant, JACKSONVILLE STATE UNIVERSITY, for their negligent assignment of Courtney Peppers, and for any and all other relief as is just under the premises.

**Demand for Jury Trial**

Plaintiff respectfully demands a trial by jury as to all matters so triable.

Dated: October 3rd, 2019

Respectfully submitted,

Roger C. Appell
Attorney for Plaintiff
301-19th Street North
Birmingham, AL 35203
(205) 252-9462
rogercappell@aol.com